# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE,
*Plaintiff*,

UNITED BIOLOGICS, LLC, dba United Allergy
Services,
*Plaintiff-Appellant*,

       No. 24-5153

*v.*

AMERIGROUP TENNESSEE, INC., dba Amerigroup
Community Care; PHYSICIANS' MEDICAL
ENTERPRISES, LLC, dba PME Communications, LLC;
ALLERGY ASSOCIATES, P.A., dba Allergy, Asthma and
Sinus Center, P.C.; NED DELOZIER,
*Defendants-Appellees.*

———————————

On Petition for Rehearing En Banc

United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:19-cv-00180—Travis Randall McDonough, District Judge.

Decided and Filed: January 13, 2026

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

———————————

## COUNSEL

**ON PETITION FOR REHEARING EN BANC and REPLY:** Casey Low, Dillon J. Ferguson, Michael H. Borofsky, Sarah Goetz, PILLSBURY WINTHROP SHAW PITTMAN LLP, Austin, Texas, for Appellant. **ON RESPONSE:** Martin J. Bishop, Kevin Tessier, CROWELL & MORING LLP, Chicago, Illinois, for Appellees.

    The court delivered an ORDER denying the petition for rehearing en banc. BUSH, J. (pp. 3–18), delivered a statement respecting the denial of the petition for rehearing en banc. MURPHY, J. (pp. 19–24), also delivered a separate opinion, in which SUTTON, C.J. and KETHLEDGE, J., joined, concurring in the denial of the petition for rehearing en banc.

_____

**ORDER**

_____

The court received a petition for rehearing en banc.  The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision.

The petition was then circulated to the full court.  No judge requested a vote on the suggestion for rehearing en banc.

Therefore, the petition is denied.

---

## STATEMENT

---

JOHN K. BUSH, Circuit Judge, respecting the denial of rehearing en banc. This case involves an alleged conspiracy to restrain trade in the market for allergy testing and immunotherapy in Tennessee. The First Amended Complaint (FAC) states that defendant-appellee Allergy Associates has a 70% market share and that plaintiff-appellant United Allergy challenged this dominance when it teamed up with primary care physicians (PCPs) to create new competition. According to United Allergy, it provided staffing and supplies so that PCPs could provide similar services to those offered by Allergy Associates. But the venture between United Allergy and the PCPs failed. The reason, according to the FAC, was that Allergy Associates made unfounded accusations to several insurance companies (who are also named defendants) that the PCPs' practices were fraudulent and encouraged those insurers to deny reimbursement to PCPs for services provided jointly by United Allergy and the PCPs. The FAC alleges what amounts to a group boycott by the insurers that Allergy Associates orchestrated. R. 103, FAC, PageID 2715.

United Allergy came to federal court for relief, but the panel in this appeal found no antitrust standing. It characterized United Allergy as only a supplier to the PCPs. United Allergy therefore lacked a direct contractual relationship with Allergy Associates or the insurance companies, which the panel believes is required. The panel relied on *Illinois Brick Co. v. Illinois*, which held that indirect purchasers (i.e., customers of the defendant's victim who was overcharged) cannot sue for damages under the Sherman and Clayton Acts based on the victim passing on the overcharge to those customers. 431 U.S. 720, 735–36 (1977).

I respect the panel's decision as reasonably applying Supreme Court precedent. But I write separately to suggest that this case may warrant the Court's review to clarify the parameters of *Illinois Brick* in the context of an alleged group boycott and plaintiffs that operated essentially as part of an apparent joint venture.

As discussed below, there is another competing view of the precedent which aligns with the pragmatic view of antitrust law that the Supreme Court generally takes. *See generally Am.*

*Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010) ("[W]e have eschewed such formalistic distinctions in favor of a functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate."). Under this approach, United Allergy has alleged enough to show antitrust standing.

The panel's holding to the contrary may make it very difficult, if not impossible, for participants in a joint venture—how I characterize the arrangement between United Allergy and each PCP[1]—to bring Sherman Act claims. A basic premise of federal antitrust law is that even the smallest companies should have the opportunity to enter a market without illegal interference by incumbents. And sometimes a joint venture is the most efficient means—indeed, it may be the only way—through which new competitors can challenge an entrenched entity.

I fear the panel's decision will undermine important legal protections for such new market entrants. As a result, consumers will be harmed. As Judge Kethledge emphasized in his concurrence to the panel opinion, the majority's decision may be an eminently defensible application of governing precedent. But as he also noted, if the pleaded allegations are true, patients will pay more and suffer from less-available allergy and immunotherapy treatments, particularly in rural areas. More broadly, I worry that consumers in general may suffer because the panel may have created a virtually insurmountable hurdle for certain joint-venture participants to sue when a group boycott drives them out of a market.

## I.

My concerns with the panel opinion are four-fold. *First*, I do not think a challenge to an alleged group boycott brought by a joint-venture participant (the fact pattern here) raises the calculation-of-damages problem posed by a challenge of an indirect purchaser to an overcharge (the fact pattern of *Illinois Brick*). *Second*, the panel's approach, while faithful to precedent, may be more formalistic than the Supreme Court would follow if it reviewed this case. *Third*, the panel opinion reads the Court's precedents that apply *Illinois Brick* differently than I would. *Fourth*, the

---

[1]In the parties' home State of Tennessee, a joint venture is "a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge" but do not "creat[e] a partnership in the legal or technical sense of the term." *Fain v. O'Connell*, 909 S.W.2d 790, 793 (Tenn. 1995) (cleaned up).

panel held that *Illinois Brick* bars a suit for injunctive relief, even though the Court has never endorsed such a holding and other circuits have expressly rejected it.

## A.

My first concern is that the panel applied the *Illinois Brick* rule to a group-boycott case that does not involve overcharge damages.

In *Illinois Brick*, the Supreme Court sought to mitigate the potential problems with overcharge plaintiffs who bring antitrust actions. As the Court explained, allowing an indirect purchaser to sue over supra-competitive prices paid by the direct purchaser and then passed down the chain would require "trac[ing] the effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois Brick*, 431 U.S. at 725. In other words, a court would need to figure out (1) what the competitive price would have been, (2) what the direct purchaser would have charged the indirect purchaser if the direct purchaser paid the competitive price, (3) what the indirect purchaser would have charged its customers if the direct purchaser paid the competitive price, and (4) what the indirect purchaser's profits ultimately would have been without the defendant's anticompetitive conduct.

Calculating the direct purchaser's loss is easy because we can determine the competitive price and then subtract that from the supra-competitive price it actually paid. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and their Application* ¶ 395 (2022). But damages get more speculative the further down the chain we go. Because it is unclear whether the direct purchaser (or the indirect purchaser) would have charged a different price had the defendant not charged supra-competitive prices, we do not know whether the indirect purchaser would ultimately have suffered any harm.[2] And we are not supposed to speculate about

---

[2]In his concurrence in the denial of rehearing en banc, Judge Murphy neglects this rationale for *Illinois Brick* (that is, to avoid speculative damages) when he suggests that overcharge damages and group boycott damages should be treated the same for antitrust standing purposes. *See* Murphy Concurrence at 19–20. The Court's reasoning in *Illinois Brick* stemmed from its "unwillingness to complicate treble-damages actions with attempts to" calculate the overcharge damages. *Illinois Brick v. Illinois*, 431 U.S. 431 U.S. 720, 725 (1977). And "a speculative or illogical theory of damages" is a "traditional proximate-cause problem . . . ." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004). So proximate causation—the requirement arising from the "by reason of" text emphasized by

whether a plaintiff has suffered damages. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–63 (1931).

Those concerns do not exist in a group boycott as alleged here. Calculating damages from such a group boycott is relatively easy: they are the profits the victim would have made if it were not driven from the market. *See Olsen v. Progressive Music Supply, Inc.*, 703 F.2d 432, 439 (10th Cir. 1983). And, for a group boycott that harms a joint venture as alleged here, damages to each venture participant may be calculated based on the agreed-upon share of revenue that each participant would have received from sales lost because of the boycott. *See generally* Areeda & Hovenkamp ¶ 397a (explaining that the measure of damages is the plaintiff's net profits—i.e., the revenue one participant would have made minus the fees paid to the other participant).

This logic finds support from out-of-circuit precedent indicating that *Illinois Brick* generally does not apply in group-boycott cases. Writing for a unanimous Seventh Circuit, then-Chief Judge Posner observed that "the *Illinois Brick* rule, which is a rule concerning overcharges, would fall away" if the plaintiff asserted the defendants were boycotting it. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997), *abrogated in part on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998). The Second Circuit later adopted that statement as a holding, explaining that *Illinois Brick* does not bar a suit when the "[p]laintiffs seek damages not for losses incurred due to increasing prices, but instead, for losses incurred as a result of lost access" to the market. *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 80 (2d Cir. 2025) (cleaned up). The Second and Seventh Circuits therefore interpret the "by reason of" language as "prohibit[ing] indirect sellers from suing if they allege a downstream horizontal cartel" caused them to pay an overcharge and "permit[ting] indirect sellers to sue if they

---

Judge Murphy—should turn on whether damages are speculative or not. That, I submit, is the true underpinning of the *Illinois Brick* "bright-line rule . . . ." *Apple v. Pepper*, 587 U.S. 273, 280 (2019). And that bright-line rule need not be so broad as to deny a plaintiff antitrust standing where, as here, damages are relatively easy to calculate.

Indeed, the Court in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*—the case that ultimately led to the *Illinois Brick* rule—determined that "an overcharged buyer" with "a pre-existing 'cost-plus' contract" would fall outside the indirect purchaser rule's scope because it would be "easy to prove" the indirect purchaser's damages. 392 U.S. 481, 494 (1968). Likewise, here, United Allergy's damages from the group boycott would seem to be relatively easy to prove.

allege a downstream group boycott" caused them to lose profits as a result of lost access to the market.  Murphy Concurrence at 20 (emphasis deleted).

## B.

My second concern is with the panel's formalistic view of antitrust standing.  The Supreme Court directs that we analyze a business practice's "demonstrable economic effect rather than . . . [engage in] formalistic line drawing."  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 887 (2007) (quoting *Cont'l T. V., Inc. v. GTE Sylvania*, 433 U.S. 36, 58–59 (1977)) (cleaned up).  But, I fear, the panel does the latter when it observes that United Allergy "resembles a 'supplier' to the primary-care physicians and operates in a distinct market vertically upstream of the affected one."  *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795, 810 (6th Cir. 2025) (quoting *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 404, 406 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014)).  That might be true in the literal sense that United Allergy provides equipment and specialist technicians to the PCPs.  But the FAC also alleges that United Allergy and the PCPs combine inputs to provide products and services in a particular market, R. 103, FAC, PageID 2671, which looks more like a joint venture than the typical arrangement between supplier and manufacturer.

The panel was right to note that United Allergy cannot provide allergy testing or immunotherapy by itself because it needs doctors for that.  *Amerigroup*, 155 F.4th at 810.  But by the same token, the PCPs cannot provide the allergy testing and immunotherapy by themselves, either, because they do not have the staff, equipment, and products to provide that service.  In other words, the business model does not work without *both* United Allergy's and the PCPs' participation.  Unlike a traditional supplier-manufacturer relationship, United Allergy and the PCPs function as one because they are jointly providing a service to that market.  *See* R. 103, FAC, PageID 2671 ("Since 2009, UAS technicians and more than 2,000 primary care physicians have jointly provided allergy testing and allergen immunotherapy across 29 states.").

The joint nature of the business venture is key here.  In a normal supplier-manufacturer relationship, the supplier is not trying to create a product or service *with* the manufacturer.  He is trying to create a component part *for* the manufacturer.  But here, United Allergy is trying to sell

a service (allergy testing and allergen immunotherapy) *with* the PCPs rather than selling a service or product *for* the PCPs. That is what distinguishes this case from the traditional *Illinois Brick* case, where a consumer might sue a bottle manufacturer because it charged Pepsi supra-competitive prices for plastic bottles. That is also what prevents my proposed rule from becoming a "nebulous standard." Murphy Concurrence at 22. In Judge Murphy's hypothetical about car manufacturers, the supplier and the manufacturer would not be in a joint venture because the supplier is creating a product for the manufacturer, which is then independently using that product to create the car. By contrast, United Allergy and the PCPs are creating a service together because they are jointly providing the allergy testing.

The panel reasoned that United Allergy is an indirect seller under *Illinois Brick* simply because it sells its services to the PCPs, who then sell their services to patients and insurance companies. *See Amerigroup*, 155 F.4th at 814–15. But under the panel's logic, United Allergy would have had antitrust standing if the PCPs sold their services to United Allergy, who sold its services to the insurers. It is hard to understand why a joint venture participant would have standing in the latter scenario (the PCP selling to United Allergy) but not the former (United Allergy selling to the PCP). The only difference is the direction in which money flows through the joint venture.

In substance, United Allergy directly competes with Allergy Associates. Both United Allergy and Allergy Associates seek patients who need allergy testing and immunotherapy. The only difference between the two approaches is whether doctors are on staff to provide the medical services. But either way, United Allergy and Allergy Associates each has unique ways of attracting patients, the essence of a competitor-competitor relationship.

The Second Circuit dealt with similar practical realities in *Crimpers Promotions Inc. v. Home Box Off., Inc.*, 724 F.2d 290 (2d Cir. 1983). It held that a member of a joint venture had antitrust standing to sue two defendants that instigated a group boycott against the joint venture, even though the plaintiff was not directly injured by the boycott. *See id.* at 290. The plaintiff tried to create a joint venture with television executives to run a conference, and HBO and Showtime allegedly began harassing the executives. *Id.* at 291. Judge Henry Friendly, writing for a

unanimous court, observed that the plaintiff "got in the way" of the defendants' relationships with the executives, so the defendants "made it suffer for trying to do so." *Id.* at 294.

Similar illegal conduct is alleged here. Before United Allergy entered the market, the PCPs had to refer their patients to Allergy Associates for allergy and immunotherapy treatment. R. 103, FAC, PageID 2668–70. United Allergy sought to provide the PCPs an alternative, whereby the PCPs themselves could provide the treatment by using United Allergy's products and services. *Id.* at PageID 2671. United Allergy thus "got in the way" of the Allergy Associates-PCP relationship, and Allergy Associates is alleged to have made United Allergy "suffer for trying to do so." *Crimpers Promotions*, 725 F.2d at 294; *see* R. 103, FAC, PageID 2678–2703.

My argument is more nuanced than Judge Murphy understands it to be. *See* Murphy Concurrence at 21. My concern with the panel's formalism is not rooted in the overarching rule of *who* may sue for an antitrust violation. As I note below, we both agree that indirect purchasers cannot sue under *Illinois Brick*. *See infra* Part II. Assuming that this is a formalistic rule—a debatable proposition given the ownership or control exception, *see infra* Part I.C—my concern is with the antecedent issue of how to define an indirect purchaser. That is a substantive question that, like the other substantive questions of Sherman Act liability, should not be answered formalistically. *See McCready*, 457 U.S. at 480–81 (applying the pragmatic and market-centric view I advocate to hold that the plaintiff had antitrust standing).

Even if the panel is correct that United Allergy *itself* is not a competitor in the relevant market, I am not confident that this factor alone is enough to deny United Allergy antitrust standing. In *Novell, Inc. v. Microsoft Corp.*, the Fourth Circuit stated that the Supreme Court had "rejected" Microsoft's theory that an antitrust plaintiff must be either a consumer or competitor in the relevant market. 505 F.3d 302, 311–12 (4th Cir. 2007). Instead, the Fourth Circuit concluded that other affected entities could bring a Sherman Act claim. *Id.* at 314. And in *Ostrofe v. H.S. Crocker Co., Inc.*, the Ninth Circuit recognized antitrust standing of an employee who was "boycotted from further employment in the industry" for failing to cooperate with the defendant's alleged anticompetitive conduct because, although he was not a participant in the market where the alleged restraint was taking place, he lost his job because of his refusal to help carry out the

restraint. 740 F.2d 739, 742, 746–47 (9th Cir. 1984). So although the employee was not directly targeted by the anticompetitive conduct, he suffered a harm from it such that he had standing to sue. *Id.* at 743.

## C.

My third concern is that the panel opinion reads the Supreme Court's proximate-cause precedents more literally than perhaps it should, given the Court's decisions applying *Illinois Brick*. The Court has twice suggested that the mere existence of a corporate entity between the plaintiff and the defendant would not bar antitrust standing under *Illinois Brick*.

The first case, *California v. ARC America Corp.*, held that *Illinois Brick* does not bar suit "when the direct purchaser is owned or controlled by the indirect purchaser . . . ." 490 U.S. 93, 97 n.2 (1989). The entities contemplated in *ARC* were functionally "a single entity that bears the entire overcharge." Areeda & Hovenkamp ¶ 346f. In such cases, existence of a level of corporate separateness between the plaintiff and defendant thus would not be enough to defeat the claim. *See In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18–19 (3d Cir. 1978) (holding that a subsidiary is inseparable from the parent for *Illinois Brick* purposes). Similarly, here, the single entity is the joint venture between United Allergy and a PCP. This business arrangement is, in a sense, controlled by each entity, for both are necessary for the venture to exist.

The second case, *Blue Shield of Virginia v. McCready*, held that *Illinois Brick* will not bar the suit when "[t]he harm to" the plaintiff "and her class was clearly foreseeable . . . ." 457 U.S. 465, 479 (1982). McCready was a proper antitrust plaintiff because, even though her psychologist bore the brunt of the anticompetitive harm, McCready's "injury was 'inextricably intertwined' with the intended harm to psychologists" given that it was impossible to harm the psychologists without also harming McCready. Areeda & Hovenkamp ¶ 339f (quoting *McCready*, 457 U.S. at 484). Put differently, "[t]he harm to McCready was a necessary step in effecting the ends of the alleged illegal conspiracy and an integral aspect of the conspiracy alleged." *Ostrofe*, 740 F.2d at 745 (quoting *McCready*, 457 U.S. at 479) (cleaned up). That made McCready's injury clearly foreseeable and thus outside the reach of *Illinois Brick*.

Likewise, here, United Allergy's alleged injury was clearly foreseeable. Allergy Associates knew that United Allergy would face harm because Allergy Associates was trying to drive United Allergy out of the market. *See* R. 103, FAC, PageID 2678–79. And the harms to the PCPs and United Allergy are inextricably intertwined. In much the same way the insurers boycotted psychologists in *McCready* precisely because patients like McCready received therapy from psychologists, the insurance companies here allegedly boycotted the PCPs precisely because United Allergy worked with them. By driving the PCPs out of the market, Allergy Associates and the insurance companies necessarily drove United Allergy out of the market as well. Put differently, the harm to United Allergy was a necessary step in carrying out the group boycott and an integral aspect of the boycott alleged. My reading of *McCready* would suggest that this alleged harm to United Allergy was clearly foreseeable and thus outside the reach of *Illinois Brick*.

The panel's rejection of this conclusion rests on what it calls a "clear 'rule of contractual privity'" from *Apple v. Pepper*, 587 U.S. 273 (2019). *Amerigroup*, 155 F.4th at 815 (quoting *Pepper*, 587 U.S. at 289 (Gorsuch, J., dissenting)). Because United Allergy was not in contractual privity with the insurance companies, it could not recover damages for lost sales. *Id.*

That is one way to read *Pepper*'s application of *Illinois Brick*, but it is not the only way. *Pepper* may not set a rule of contractual privity because the majority never frames its decision in that light—the dissent does. The majority says only that "the absence of an intermediary is dispositive"—i.e., a plaintiff will always have antitrust standing when there is no one between the plaintiff and the defendant. *Pepper*, 587 U.S. at 281. But the fact that a plaintiff will always have antitrust standing if it is in contractual privity with the defendant (or when no one stands between them) does not necessarily mean that it will never have antitrust standing if it is not (or when someone stands between them). Indeed, the *McCready* plaintiff was a third party to psychologists' contracts with the insurance companies, so she lacked privity of contract with the defendant insurers. *See McCready*, 457 U.S. at 468; 13 *Williston on Contracts* § 37:1 (4th ed. May 2025 Update).

I suggest that *Pepper* be read simply to apply *McCready*'s rule of foreseeability for proximate cause, not to establish a rule of privity. It was foreseeable that McCready would have

been harmed by the anticompetitive conduct because, as the psychologists' patient, she was the person the insurance companies wanted to coerce into seeing a psychiatrist instead. *McCready*, 457 U.S. at 479. And the harm to the plaintiffs in *Pepper* was foreseeable because Apple was trying to extract the supra-competitive prices from the plaintiffs. *See* 587 U.S. at 281. In other words, the harm to a direct purchaser or a plaintiff in contractual privity is foreseeable as a matter of law. But that does not, of course, exclude the possibility that a defendant could foresee harm to a plaintiff that lacks contractual privity.[3]

I am not, as Judge Murphy suggests, calling for an "exception to *Illinois Brick*." Murphy Concurrence at 21. The question in this case is how to characterize two separate business entities that—in United Allergy's words—"jointly provide[]" a service in a market. R. 103, FAC, PageID 2671, 2677, 2708. And I am suggesting that those entities should be considered one for *Illinois Brick* purposes such that United Allergy would be the direct seller in this case. Adopting my interpretation of the *Illinois Brick* rule would not change *Illinois Brick*'s core holding that indirect purchasers cannot sue for overcharge damages. At most, it would change how we determine who the direct and indirect purchasers are.

Nor does my view, as Judge Murphy asserts, conflict with *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990). *See* Murphy Concurrence at 21. In *UtiliCorp*, the indirect purchaser ratepayers were distinct from, and not acting as a single entity in the market with, the direct purchaser utility companies. *See* 497 U.S. at 204–05. It says nothing about this case, where two entities are functioning as one within the relevant market. Moreover, because it was unclear whether "the direct purchaser" in *UtiliCorp* "could [] have raised its rates prior to the overcharge," there is no way to calculate what the direct purchasers would have charged in a competitive market,

---

[3]Judge Murphy's concurrence diverges from the contractual privity rule that the panel opinion purports to apply, arguing instead that *Pepper* "unambiguous[ly]" set a rule that "all direct purchasers from an antitrust defendant may sue" and "that all indirect purchasers may not sue." Murphy Concurrence at 22. I agree. But that does not contradict the more nuanced point that I make—that a layer of corporate separateness between the plaintiff and the defendant does not deprive the plaintiff of antitrust standing. As noted above, my point is not that indirect purchasers or sellers can have antitrust standing. Rather, it is that participants in a joint venture can each be deemed a direct purchaser or seller when that joint venture is the direct purchaser or seller.

and so on. *Id.* at 209. That is precisely the problem that the Court identified in *Illinois Brick* and precisely the problem that we do not have in a group boycott case. *See supra* Part I.A.

The operative question, therefore, should be whether the harm to the plaintiff is foreseeable. The increased prices paid by the indirect purchasers in *Illinois Brick* were not foreseeable because the defendants did not know whether the plaintiffs would have to bear those costs. But here, I think a reasonable person could conclude that United Allergy being forced out of the market is foreseeable: that is the natural, logical, and intended consequence of a group boycott allegedly designed to exclude United Allergy from the market.

Judge Murphy misunderstands the nature of the proximate causation inquiry when he suggests that I want to "replace" it "with a case-by-case foreseeability test." Murphy Concurrence at 22. Federal cases involving federally created causes of action, state tort cases, and the secondary sources almost uniformly characterize proximate causation as a foreseeability question. *See, e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004); *D.J. ex rel. R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586–87 (Mo. 2025) (en banc), *reh'g denied* (Apr. 1, 2025); *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025), *reh'g denied* (Sept. 26, 2025); *Osborne v. Atl. Ice & Coal Co.*, 177 S.E. 796, 796–97 (N.C. 1935); 65 C.J.S. *Negligence* § 209 (Dec. 2025 Update); 57A Am. Jur. 2d *Negligence* §§ 393, 448 (Nov. 2025 Update). So rather than replacing proximate causation with a case-by-case foreseeability test, I am simply returning to the core of the proximate-causation question that the Court confronted in *McCready*—whether the harm alleged is foreseeable. That is how we reconcile *Illinois Brick*, which said that there must be a direct buyer/seller relationship between the plaintiff and the defendant, and *McCready*, where the plaintiff was neither the buyer nor the seller in the unlawful restraint. And United Allergy's claims fit neatly within this framework because, as a participant in the joint venture that was targeted by the boycott, the harms to it were a necessary and clearly foreseeable result of Allergy Associates' conduct.

Judge Murphy may be correct that "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm," but "the concepts of direct relationship and foreseeability are of course two of the many shapes proximate cause took at common law." *Hemi*

*Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)) (cleaned up). And even if the Court has rejected foreseeability in the RICO context, it has expressly adopted it for cases arising under the Sherman Act. *McCready*, 457 U.S. at 479 ("The harm to McCready and her class was clearly foreseeable; indeed, it was a necessary step in effecting the ends of the alleged illegal conspiracy.").

### D.

Finally, the Court may wish to review this case because the panel applied *Illinois Brick* to a suit for an injunction.[4] The standing analysis for damages and injunction plaintiffs "will not always be identical." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n.6 (1986). Unlike a damages plaintiff, an injunction plaintiff needs to show only that it has suffered antitrust injury; proximate causation does not come into play. *See id.* The bar is much lower for injunction plaintiffs because "one injunction is as effective as 100, and, concomitantly . . . 100 injunctions are no more effective than one," which eliminates the problems from duplicative liability in a damages suit. *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 261 (1972).

Textually, that makes sense. Clayton Act § 4 provides a damages remedy for "any person who shall be injured in his business or property *by reason of* anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15(a) (emphasis added). By contrast, Clayton Act § 16 lets a plaintiff seek an injunction "against threatened loss or damage by a violation of the antitrust laws . . . ." *Id.* § 26.

---

[4]That the injunction issue was not raised until United Allergy's petition for rehearing en banc would not have precluded our consideration of that issue had we granted en banc review. "Generally, an argument not raised in an appellate brief or at oral argument may not be raised for the first time in a petition for rehearing." *Costo v. United States*, 922 F.2d 302, 302–03 (6th Cir. 1990). That "rule is not, however, absolute," and courts "may choose to entertain a new argument on rehearing if 'extraordinary circumstances' are present." *United States v. Shafer*, 573 F.3d 267, 276 (6th Cir. 2009) (quoting *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008)). For example, courts are more willing to overlook the failure to raise the issue when (1) it is not "willful" or strategic and (2) the argument raised for the first time on rehearing "goes to the heart of" the court's "initial holding . . . ." *Id.* at 277.

This case meets those criteria. *First*, there is no sign that United Allergy strategically or willfully failed to assert the injunction issue until the petition. When the district court dismissed the action for lack of antitrust injury, it did not address causation, so there was no reason to address causation in the parties' principal briefs. Only after the panel decided to resolve this case on a different ground from the district court did the injunction issue come into play. *Second*, the argument raised in the petition goes to the core of the panel's original holding. If the petition is correct that *Illinois Brick* does not apply to suits for injunctions, then the panel's holding would conflict with Supreme Court precedent.

The broader language in § 16, along with the lack of an explicit causation requirement, suggests that many requirements from *Illinois Brick* do not apply to suits for an injunction.

This is why other circuits have said that *Illinois Brick* cannot bar suits for an injunction. *See, e.g.*, *Mosaic Health, Inc.*, 156 F.4th at 80; *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 966 (9th Cir. 1999); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir. 1996). Those courts have recognized that "standing under Section 16" of the Clayton Act "raises no threat of multiple lawsuits or duplicative recoveries," so "*Illinois Brick* does not apply" to them. *Mosaic Health, Inc.*, 156 F.4th at 80; *see also Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.*, 596 F.2d 573, 593–94 (3d Cir. 1979).[5]

## E.

Despite my reservations, I can understand why the court reached the decision it did. The Supreme Court has imposed a proximate causation requirement on all federal causes of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–33 (2014). Proximate causation "bars suits for alleged harm that is too remote from the defendant's unlawful conduct," which "is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts." *Id.* at 133 (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268–69 (1992)) (quotation marks omitted). Under at least one reading of the FAC, United Allergy is seeking redress that is "purely derivative of misfortunes visited upon a third person by the defendant's acts." *Id.*

That reading, however, may not do full justice to the allegations. At the Rule 12(b)(6) stage, we are supposed to read the complaint liberally to infer liability whenever such an inference is plausible. *See, e.g.*, *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th

---

[5]To the extent Judge Murphy asserts "that the panel resolved th[is] issue on forfeiture grounds," Murphy Concurrence at 23, I would note that the panel opinion makes no such holding. Additionally, we give the panel an opportunity to amend its decision prior to circulating the petition for rehearing en banc to the full court for en banc consideration, *see* 6th Cir. I.O.P. 40(b)(4)(A), and the panel made no such amendment here. Thus, to the extent that Allergy Associates seeks to assert that United Allergy has forfeited review of this question before the Supreme Court, it is worth noting that: (1) the panel opinion that would be subject to certiorari review does not hold the issue forfeited, (2) forfeiture can itself be forfeited, *see Garza v. Idaho*, 586 U.S. 232, 238–39 (2019), and (3) Allergy Associates did not argue that this issue was forfeited in its principal briefing.

Cir. 2020). And such a liberal interpretation of the pleadings may suggest that United Allergy suffered a direct, foreseeable injury as a competitor of Allergy Associates and a target of its allegedly unlawful conduct.

The FAC alleges that Allergy Associates organized a per se unlawful boycott. R. 103, FAC, PageID 2665. By convincing the insurers to refuse to pay for claims made by United Allergy's PCPs, Allergy Associates "deprive[d]" a "would-be competitor[] of a trade relationship" that it needs "in order to enter (or survive in)" the allergy testing market. *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022) (quoting *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1178 (D.C. Cir. 1978)); *see also Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985). According to the FAC, Allergy Associates knew its fraud claims were unfounded, and Allergy Associates had been lobbying for years to keep United Allergy out of the market before turning to the boycott. R. 103, FAC, PageID 2679–81. If United Allergy's allegations are true, this case would appear to be a clear example of an unlawful boycott. *See Amerigroup*, 155 F.4th at 829 (Kethledge, J., concurring).

## II.

As Judge Kethledge recognized, the panel opinion may be a major blow to patients and providers in Tennessee. Thanks to United Allergy's competition, "rates came down, access to these services became more convenient, and more patients actually obtained them." *Amerigroup*, 155 F.4th at 828 (Kethledge, J., concurring). But then, the "defendants successfully conspired to eject a new and more efficient supplier from a market that had been badly undersupplied before," requiring patients again to pay the price of "travelling hundreds of miles to clinics run by a single medical practice." *Id.* at 829. Not only that, many joint-venture participants may have less antitrust protection in our circuit. If one participant is "closer" to the defendant than the other, then only that one participant can seek redress for the harms.[6] And if the closer participant cannot or does not want to sue, then the rest of the joint venture is out of luck.

---

[6]Recall that, at least in Tennessee, a joint venture will never be a single legal entity because it cannot be "a partnership in the legal or technical sense of the term . . . ." *Fain*, 909 S.W.2d at 793.

Ultimately, though, this case does not warrant en banc review. The panel opinion is a reasonable interpretation and application of the Supreme Court's precedent. Our decision whether to grant en banc review may be analogized to how we conduct habeas review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, we will not disturb a state court's ruling unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," even though we might be inclined to rule differently if we were reviewing the case in the first instance. *Hodge v. Plappert*, 136 F.4th 648, 658 (6th Cir. 2025) (en banc), *cert. denied*, No. 25-6179 (U.S. Jan. 12, 2026) (quoting 28 U.S.C. § 2254(d)(1)); *see also Randolph v. Macauley*, 155 F.4th 859, 871 (6th Cir. 2025). We should use a similar standard in the en banc process to assess our colleagues' view of Supreme Court precedent. If we second-guess our colleagues because we might have adopted the other of two competing and equally reasonable interpretations of the Supreme Court's case law, then there would be little point in using panels to decide cases at all.

Indeed, the narrow nature of my disagreement with Judge Murphy (and the panel opinion) highlights why we should avoid second-guessing each other by routinely taking cases en banc. We agree with the core premises that (1) the rules governing monopsonies and monopolies are the same,[7] (2) *Illinois Brick* imposes a bright-line rule barring suits by indirect purchasers,[8] and (3) a supplier to a seller that works directly with the monopsonist is normally an indirect seller under *Illinois Brick*.[9] Our disagreement focuses only on whether participants in a joint venture should be treated as one actor in the relevant market or two when determining whether the participants are indirect sellers under *Illinois Brick*.

---

[7]*See* Murphy Concurrence at 19; *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 813 (6th Cir. 2025); *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 321–22 (2007).

[8]*See* Murphy Concurrence at 19; *Amerigroup*, 155 F.4th at 813; *Pepper*, 587 U.S. at 280.

[9]*See* Murphy Concurrence at 1; *Amerigroup*, 155 F.4th at 813; *Zinser v. Cont'l Grain Co.*, 660 F.2d 754, 760 (10th Cir. 1981).

In our circuit, granting rehearing en banc effectively throws out all of the work that the panel has done on the case. *See* 6th Cir. Local Rule 40(d). In cases like this, where the scope of disagreement is narrow and the panel's decision is at least reasonable, we should not normally rehear a case en banc. Because the Supreme Court can narrow a grant of certiorari to focus on that core issue without vacating the entire, potentially correct, panel decision, *see, e.g.*, *Willis of Colorado Inc. v. Troice*, 568 U.S. 1140 (2013), we should generally leave it to that higher court to correct any errors in the panel's reasoning.

Given the disharmony in the application of *Illinois Brick* in the lower courts, and for other reasons discussed above, this case may be appropriate for Supreme Court review, though. The Court may wish to clarify the application of *Illinois Brick* in the context of an alleged group boycott of a business arrangement that essentially functions as a joint venture.

———————————

**CONCURRENCE**

———————————

MURPHY, Circuit Judge, with whom SUTTON, Chief Judge, and KETHLEDGE, Circuit Judge, join, concurring in the denial of rehearing en banc.  Congress has granted a cause of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws[.]"  15 U.S.C. § 15(a).  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court read the phrase "by reason of" to adopt a "bright-line rule" of proximate causation.  *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (quoting 15 U.S.C. § 15(a)).  Under this rule, "direct purchasers" (those who buy a product from antitrust-violating sellers) may sue the sellers. *Id.* at 280.  But "indirect purchasers who are two or more steps removed from the antitrust violator[s] in a distribution chain may not sue."  *Id.*  And the circuit courts all agree that this rule applies in the *opposite* direction.  *See Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 813 (6th Cir. 2025).  That is, direct sellers who sell to antitrust-violating purchasers may sue the purchasers, but indirect sellers who are "two or more steps removed" from those purchasers may not.  *Apple*, 587 U.S. at 280.  The rule thus bars United Allergy's suit in this case because it sells products and services to primary-care physicians who, in turn, sell to the alleged antitrust-violating insurers.  *See Acad. of Allergy & Asthma*, 155 F.4th at 814–20.

In his statement respecting the denial of rehearing en banc, Judge Bush finds this holding debatable on four fronts.  With respect for my colleague, I do not find the holding particularly debatable.  As Judge Kethledge noted, the Supreme Court can depart from *Illinois Brick*'s rule if it sees fit to do so.  *See Acad. of Allergy & Asthma*, 155 F.4th at 828 (Kethledge, J., concurring).  But such a change must come from that Court, not this one.

*First*, Judge Bush asserts that *Illinois Brick*'s rule should apply only to a plaintiff who seeks an illegal overcharge and alleges a horizontal price cartel—not to a plaintiff who seeks lost profits and alleges a group boycott.  Start with the substantive theory of the antitrust violation.  We typically do not interpret a statutory phrase like "by reason of" (the language that codifies the *Illinois Brick* rule) as a "chameleon" that changes its meaning based on the factual circumstances.

15 U.S.C. § 15(a); *Clark v. Martinez*, 543 U.S. 371, 382 (2005). So I do not see how this language can *prohibit* indirect sellers from suing if they allege a downstream horizontal cartel that harms both direct and indirect sellers, but also *permit* indirect sellers to sue if they allege a downstream group boycott of direct and indirect sellers. Under either theory, the indirect sellers are still indirect. And, as far as I am aware, no circuit court has interpreted the language in this way—as the panel explained. *See Acad. of Allergy & Asthma*, 155 F.4th at 816.

Turn to the requested damages. Like the Third Circuit, I find it unlikely that the Supreme Court would retain *Illinois Brick*'s rule but transform it into a mere "pleading" limit that plaintiffs can readily avoid by seeking lost profits rather than overcharge (or, as here, undercharge) damages. *Id.* at 815, 817 (citing *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 376 (3d Cir. 2005)). Again, how can an indirect seller's lost profits arise "by reason of" an antitrust violation while the indirect seller's overcharge or undercharge damages cannot? Here, moreover, at least one doctor separately sued to recover "the *entire* undercharge" (the full amount of unreimbursed claims). *Id.* at 814. He was seemingly entitled to ask for this amount under the complementary rule from *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), which prohibits courts from reducing a direct victim's damages by the amount passed on to others. So if *Illinois Brick* does not apply here, then *Hanover Shoe* cannot apply in suits by the directly injured doctors. *Cf. Apple*, 587 U.S. at 298 (Gorsuch, J., dissenting). Otherwise, direct and indirect victims could obtain double recovery over the same harm. In other words, a court must either grant overcharge and undercharge damages to directly injured parties or limit *all* parties to their lost profits. It cannot do both.

For what it is worth, if the Court does consider this question, it should consider which is the proper remedy. Some view lost profits as appropriate damages. *See Howard Hess*, 424 F.3d at 374–75. But others have cautioned that a lost-profits remedy represents a poor measure of the harm from antitrust violations. *See id.* at 375 (discussing Frank H. Easterbrook, *Treble What?*, 55 Antitrust L.J. 95, 96–97, 100–01 (1986)). For example, Medicaid markets are unusual ones in which the government itself sets reimbursement rates (and hence prices). So a lost-profits remedy might overcompensate plaintiffs if their profits arise not from their superior services but from the government's mistaken pricing of isolated services at levels above their costs.

*Second*, Judge Bush asserts that the panel opinion's formalist view conflicts with the Supreme Court's "pragmatic view" of the antitrust laws. But this claim mistakes the *substantive* standards of antitrust liability in 15 U.S.C. § 1 for the *procedural* standards over who can sue for violations in 15 U.S.C. § 15(a). Yes, when identifying the agreements that qualify as illegal "restraint[s] of trade," 15 U.S.C. § 1, the Supreme Court has looked to "demonstrable economic effect" and avoided "formalistic line drawing"—as the Court well explained in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885–87 (2007) (quoting *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 58–59 (1977)). The Court reached this result, in part, because it interpreted the phrase "restraint of trade" as codifying a common-law process that can evolve with business conditions. *See id.* at 887–88. But the panel opinion assumed that United Allergy alleged violations of the antitrust laws. *Acad. of Allergy & Asthma*, 155 F.4th at 806.

This case instead addresses a different question: who may sue for violations? That question implicates a separate statute. As I have said, Congress has granted a cause of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws[.]" 15 U.S.C. § 15(a). And when interpreting this different text, the Court has taken a formalistic approach. Indeed, the Court in *Apple* noted that *Illinois Brick* adopted a "bright-line rule" some six times. *See Apple*, 587 U.S. at 279–82, 285. The Court has stuck to this formalistic rule even when it made little economic sense—such as the case of regulated public utilities that "pass on 100 percent of their costs to their customers." *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990). "[E]ven assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case," the Court reasoned, "we think it an unwarranted and counterproductive exercise to litigate a series of exceptions." *Id.* at 217. And once a court concludes that *Illinois Brick* should apply not just when buyers sue sellers but also when sellers sue buyers (a fact that seemingly nobody disputes), its rule applies here.

Perhaps the Court will carve out Judge Bush's "joint venture" exception to *Illinois Brick*. But its refusal to create an exception for regulated public utilities leads me to conclude that *we* cannot. Indeed, the Seventh Circuit has refused to create an exception even when an indirect-purchaser parent owns the direct-purchaser subsidiaries. *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 821–22 (7th Cir. 2015) (Posner, J.). And many entities could claim that they

are engaged in a joint venture. Most distribution chains have multiple downstream suppliers. If a car manufacturer buys a large part from one supplier and that part has many components sold by others, why couldn't the car manufacturer claim it was in a joint venture with the part supplier and sue over a price cartel involving one of the components? In short, the proposed exception might well turn *Illinois Brick*'s "bright-line rule" into a nebulous standard. *Apple*, 587 U.S. at 279.

*Third*, Judge Bush would replace *Illinois Brick*'s "bright-line rule" of proximate causation with a case-by-case foreseeability test. *Id.* He reads *Apple* as holding that all direct purchasers from an antitrust defendant may sue but not necessarily the converse: that all indirect purchasers may not sue. I find *Apple* unambiguous. It repeatedly indicated that its rule meant not just that "*direct* purchasers" may sue but also that "*indirect* purchasers" may not. *Id.* at 279, 280, 282, 285. And as the panel explained, United Allergy does not sit in the middle of a two-sided market with directly contracting parties on both sides. *See Acad. of Allergy & Asthma*, 155 F.4th at 813–14, 818–19. So this case resembles neither *Apple* nor *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982). *See Acad. of Allergy & Asthma*, 155 F.4th at 813–14, 818–19.

Nor can we as a lower court jettison *Illinois Brick*'s bright-line rule in favor of the general foreseeability test that Judge Bush proposes. That test "would nullify the doctrine of *Illinois Brick*." *Motorola*, 775 F.3d at 822. Price fixers can almost always foresee that their illegal conduct will affect not just their direct purchasers but also downstream purchasers. *See id.* Yet the Supreme Court has sometimes even refused to allow the intended victims of antitrust violations to sue—even though that harm is, by definition, foreseeable. *See Associated Gen. Contractors v. Cal. State Council*, 459 U.S. 519, 529 (1983). That is because the Court has long treated the directness of the injury and the foreseeability of the injury as *independent* proximate-causation requirements. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010). And the *Illinois Brick* rule arises out of the directness (not the foreseeability) part of proximate causation.

*Fourth*, Judge Bush asserts that the panel opinion created a circuit conflict over a question about who may seek injunctive relief. But United Allergy has forfeited its belated suggestion that different standards should apply to a request for injunctive relief than a request for damages. The district court dismissed United Allergy's antitrust claims without mentioning that the company

had sought injunctive relief or the separate cause of action for that relief: 15 U.S.C. § 26.  *See generally United Biologics, LLC v. Amerigroup Tenn., Inc.*, 2022 WL 22897162 (E.D. Tenn. Jan. 27, 2022).  In its opening brief on appeal, United Allergy stated that it had sought "injunctive relief" in its procedural background, but it never argued that distinct standards should apply to that relief.  Appellant's Br. 22.  Nor did United Allergy cite (let alone interpret the text of) the separate cause of action that authorizes this relief.  United Allergy instead asserted that it had stated a cause of action under "Section 4 of the Clayton Act" (namely, 15 U.S.C. § 15).  Appellant's Br. 26.  It also did not use the word "injunction" or mention the cause of action for this relief (15 U.S.C. § 26) in its reply brief or in the supplemental brief that we requested.  If parties forfeit (or even waive) arguments not raised in their opening briefs, *see Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013), they certainly forfeit arguments not raised until a petition for rehearing en banc.  (The panel opinion itself, of course, could not have *expressly* articulated this forfeiture finding because United Allergy did not raise this argument until the rehearing stage.)

As a result, I do not view the panel opinion as resolving any questions related to injunctive relief on the merits.  In particular, it did not address whether the language in 15 U.S.C. § 26 ("threatened loss or damage by a violation of the antitrust laws") has a different causal scope than the language in 15 U.S.C. § 15 ("injured in his business or property by reason of anything forbidden in the antitrust laws").  Nor did the panel depart from other circuit courts that have proposed more relaxed standards for § 26's cause of action.  Perhaps there are good reasons to extend *Illinois Brick*'s rule to the injunction context because that rule flows out of the proximate-causation requirement that the Court presumptively reads into all private rights of action.  *See Apple*, 587 U.S. at 291 n.1 (Gorsuch, J., dissenting).  But that question must await a case in which the parties litigate it.  So if, as Judge Bush says, the Supreme "Court may wish to review" this injunction issue, it should recognize that the panel resolved that issue on forfeiture grounds (not the merits).  And the proper standards for injunctive relief remain open in our court.

\*  \*  \*

United Allergy also implies that the panel resolved this case on a ground that the defendants did not preserve, pointing out that they did not cite *Illinois Brick* in their original briefing.  But

parties raise and preserve arguments—not case citations. And the defendants advocated for *Illinois Brick*'s *direct-injury* element under what appeared to be our ad hoc balancing test for antitrust standing. *See Acad. of Allergy & Asthma*, 155 F.4th at 807. But, as the panel explained, our test is better read as asserting two distinct elements rather than a jumble of factors: that the plaintiff suffered an antitrust injury and that the defendants proximately caused that injury. *See id.* at 807–08. The district court's opinion found that United Allergy did not satisfy either element. So Judge Bush is mistaken to suggest that the court dismissed this case *solely* for lack of antitrust injury. The court held that the company did not compete in the relevant market (and so had not pleaded an antitrust injury). *See United Biologics*, 2022 WL 22897162, at *5–7. And it held that United Allergy was not directly injured (and so had not pleaded proximate cause). *See id.* at *8–9. The defendants on appeal likewise raised both arguments—even before we asked for supplemental briefing on how *Illinois Brick* fits into that framework. *See, e.g.*, Appellee's Br. of Amerigroup Tenn., Inc., at 26–33, 35–41 (antitrust injury); *id.* at 33–35, 41–43 (indirect injury).

Ultimately, the panel opted to resolve this appeal based on *Illinois Brick*'s "bright-line" direct-injury rule. *Apple*, 587 U.S. at 279. If the Supreme Court means to replace that rule with an "open-ended balancing test[]," it can tell us. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014). Until it does, I would follow its decisions to their logical conclusions. On this understanding, I concur in the denial of rehearing en banc.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

_____

Kelly L. Stephens, Clerk